IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| HALDERON MURPHY, ) | |
| ) | |
| Plaintiff, ) | No. 16 CV 371 |
| ) | |
| v. ) | JURY TRIAL DEMANDED |
| ) | |
| TIMOTHY HAYES, in his individual ) | |
| capacity, RAYMOND MCINERNEY, ) | |
| in his individual capacity, and the ) | |
| CITY OF CHICAGO, a municipality, ) | |
| ) | |
| Defendants. ) | |

**AMENDED COMPLAINT**

NOW COMES the Plaintiff, HALDERON MURPHY, by and through his counsel, the Law Office of Steven W. Becker LLC, and complains of Defendants TIMOTHY HAYES, in his individual capacity, RAYMOND MCINERNEY, in his individual capacity, and the CITY OF CHICAGO. In support thereof, Plaintiff states as follows:

**Introduction**

1. This is a civil action brought pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988 to redress deprivations under color of law of the Plaintiff's rights as secured by the Constitution of the United States of America.

**Jurisdiction and Venue**

2. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a)(3).

3. Venue is proper under 28 U.S.C. § 1391(b). All events occurred within the Northern District of Illinois. Upon information and belief, all parties to the case reside within the Northern District of Illinois.

**Parties**

4. Plaintiff HALDERON MURPHY ("Plaintiff") is a citizen of the United States who resides in Lynwood, Illinois.

5. Defendant TIMOTHY HAYES ("Officer Hayes"), Star No. 7308, is a present or former employee of the City of Chicago Police Department. At all times relevant to this Complaint, Officer Hayes was employed by and acted within the scope of his employment as a duly appointed police officer of the City of Chicago and under color of state law.

6. Defendant RAYMOND MCINERNEY ("Sergeant McInerney"), Star No. 2536, is a present or former employee of the City of Chicago Police Department. At all times relevant to this Complaint, Sergeant McInerney was employed by and acted within the scope of his employment as a duly appointed sergeant of the City of Chicago and under color of state law.

7. Defendant CITY OF CHICAGO is a municipal corporation organized under the laws of the State of Illinois. The City is or was the employer of all other Defendants.

**Facts**

8. In late May 2010, Darlene Chambers-Carpenter and her husband moved into a new apartment on the third floor of 6735 South Clyde Avenue, Chicago, Illinois.

9. Mrs. Carpenter's daughter, Laketa Chambers, and Laketa's two children also lived in the apartment.

10. When removing the old appliances to install new ones, Mrs. Carpenter's husband found a .38 caliber revolver and a box of ammunition under the stove.

11. Mrs. Carpenter placed the gun in a purse and stored it, along with the ammunition, on a high shelf in her bedroom's walk-in closet.

12. Mrs. Carpenter planned to inform the police about the abandoned firearm.

13. Before Mrs. Carpenter was able to do so, her mother-in-law passed away.

14. Mrs. Carpenter went to Mississippi to attend to family matters.

15. The firearm remained where she had left it.

16. On June 12, 2010, Halderon Murphy was visiting his friend Laketa Chambers at the Carpenters' apartment.

17. Darlene Carpenter was still out of town.

18. At approximately 2:50 p.m., Area 1 Gun Team members, including Sergeant McInerney and Officer Hayes, arrived at the front door of 6735 South Clyde Avenue, Chicago, Illinois.

19. Sergeant McInerney announced his office and requested permission to enter.

20. After Laketa Chambers opened the door, the police entered the apartment with their guns drawn at her and her children.

21. Ms. Chambers did not give her consent to the police entering the apartment.

22. The police ordered everyone, including Mr. Murphy, to sit on the floor.

23. The police told Ms. Chambers that they had an arrest warrant for a man named Terrell Reed.

24. The police did not show Ms. Chambers the arrest warrant.

25. The officers spent several minutes searching the apartment for Terrell Reed but did not find him.

26. Officer Hayes searched in Darlene Carpenter's bedroom.

27. Officer Hayes found a purse on the top shelf on Mrs. Carpenter's bedroom closet.

28. Officer Hayes also found a box of ammunition under the purse.

29. Officer Hayes opened the purse and found a revolver.

30. Officer Hayes exited the bedroom and asked whose gun it was.

31. Ms. Chambers answered that it was her mother's.

32. Mr. Murphy did not make any statements to the police regarding a gun being in the apartment.

33. At trial, both Sergeant McInerney and Officer Hayes testified falsely that, in response to a question by Sergeant McInerney about whether there were any weapons in the apartment, Mr. Murphy spontaneously volunteered that Laketa Chambers' mother had a gun in her purse in the bedroom closet.

34. The police lacked probable cause to believe that they would find Terrell Reed hiding inside a woman's purse.

35. The police never saw Mr. Murphy in possession of the gun.

36. The police never saw Mr. Murphy in Mrs. Carpenter's bedroom.

37. The police never saw Mr. Murphy in Mrs. Carpenter's bedroom closet.

38. The police did not locate any traditional indicia of residency connecting Mr. Murphy with the Carpenters' apartment, such as an identification card, mail, keys, or his name on the mailbox.

39. At the time of the search, Mr. Murphy lived in Glenwood, Illinois.

40. Mr. Murphy did not reside at 6735 South Clyde Avenue, Chicago, Illinois.

41. No fingerprints were taken from the gun, purse, or ammunition.

42. Sergeant McInerney informed Laketa Chambers that he would have to speak to Darlene Carpenter about the gun.

43. Sergeant McInerney had a phone conversation with Darlene Carpenter.

44. Mr. Murphy did not make any remark to Ms. Chambers that he was a convicted felon during the time the police were in the apartment.

45. At trial, both Sergeant McInerney and Officer Hill testified falsely that, after the phone call, they overheard Mr. Murphy telling Ms. Chambers that he was a convicted felon.

46. At trial, Sergeant McInerney testified that he arrested Mr. Murphy at the apartment and then took him to Area 1 for questioning.

47. At trial, Officer Hayes testified that he thought Mr. Murphy came to the police station voluntarily and was not arrested until after he arrived at Area 1.

48. At the time of his arrest, Mr. Murphy was not breaking any laws.

49. At trial, Officer Hayes originally testified that Mr. Murphy was already handcuffed to a chair when he gave him *Miranda* warnings at Area 1.

50. Officer Hayes later testified at trial that he first *Mirandized* Mr. Murphy, then handcuffed him to the chair, and began to ask him questions.

51. Mr. Murphy did not make any statement to Officer Hayes at Area 1 that the gun was his.

52. At trial, Officer Hayes testified falsely that Mr. Murphy then said, "Listen man, the gun is mine. I had it for protection. The dude you're looking for just shot up the neighborhood."

53. Officer Hayes did not record the alleged statement by any means, although such means were available.

54. At trial, Officer Hayes testified that Sergeant McInerney was within well within earshot of Mr. Murphy when he gave the purported confession.

55. Sergeant McInerney did not testify at trial that Mr. Murphy made a confession at Area 1.

56. Neither Darlene Carpenter nor Laketa Chambers are related to Mr. Murphy.

57. The arrest warrant for Terrell Reed was never entered into evidence at trial.

58. The arrest warrant for Terrell Reed was never handed over to the State's Attorney's Office.

59. Officer Hayes never saw the arrest warrant.

60. The firearm located in the Carpenters' apartment was never introduced into evidence at the trial.

61. On September 29, 2010, Mr. Murphy was found guilty of the felony offenses of armed habitual criminal and unlawful use of a weapon by a felon following a bench trial before the Honorable Vincent M. Gaughan under Case No. 10 CR 11890 in the Circuit Court of Cook County.

62. On October 28, 2010, Mr. Murphy was sentenced to six years and six months' imprisonment in the Illinois Department of Corrections.

63. Mr. Murphy successfully pursued a direct appeal to the Illinois Appellate Court.

64. On December 21, 2012, the Appellate Court reversed Mr. Murphy's convictions on the ground of ineffective assistance of counsel and remanded the case for further

proceedings, holding that trial counsel was ineffective for failing to file a motion to suppress the firearm at issue on Fourth Amendment grounds.

65. On June 21, 2013, the Appellate Court issued a slightly modified decision on denial of the State's petition for rehearing, remanding the case for the filing of a suppression motion and the conducting of a suppression hearing, with instructions that the convictions be vacated and a new trial ordered upon grant of the motion.

66. On December 31, 2013, the trial court conducted a suppression hearing and granted Mr. Murphy's motion to quash illegal search and arrest and to suppress evidence, thereby suppressing the firearm.

67. On the same date, pursuant to the Appellate Court's mandate, Mr. Murphy's convictions were vacated and a new trial ordered.

68. On January 14, 2014, both charges were dismissed *nolle prosequi* by the State.

69. Mr. Murphy was released from custody on January 15, 2014.

70. As a result of the charges, Mr. Murphy was incarcerated for three (3) years and seven (7) months.

71. Mr. Murphy was in custody from June 12, 2010 until January 15, 2014.

**Count I – Section 1983 Claim for Violation of Due Process (*Newsome* Claim)**

72. Mr. Murphy incorporates by reference paragraphs 1-71.

73. While acting individually, jointly, and in conspiracy under color of state law, the Defendants falsely charged or caused Mr. Murphy to be charged with the offenses in Case No. 10 CR 11890 and effected the wrongful continuation of that case, on the basis of fabricated evidence.

7

74. Defendants violated Mr. Murphy's right to due process, protected under the Fifth and Fourteenth Amendments to the U.S. Constitution, by willfully and wantonly withholding material exculpatory evidence from the prosecution and the court before and during Mr. Murphy's trial, by fabricating evidence, suborning the perjury of Sergeant McInerney and Officer Hayes, and by testifying falsely about statements allegedly made by Mr. Murphy regarding the firearm recovered on June 12, 2010.
    a. The evidence was favorable to Mr. Murphy because of its exculpatory and impeaching nature.
    b. The evidence was suppressed willfully.
    c. Prompt disclosure of the evidence would have altered the prosecution's decision to proceed with charges against Mr. Murphy and to go to trial.
75. Defendants' misconduct was undertaken with malice, willfulness, and reckless indifference to the rights and innocence of Mr. Murphy.
76. Defendants' actions directly and proximately resulted in the denial of Mr. Murphy's right to a fair trial and his subsequent wrongful incarceration for more than three and one-half years, costs incurred in trial defense, as well as attendant injuries including but not limited to loss of wages, emotional damage and trauma, humiliation, damage to personal and professional reputation, loss of liberty, and mental distress and anguish.

WHEREFORE, Plaintiff HALDERON MURPHY demands judgment jointly and severally against TIMOTHY HAYES, in his individual capacity, and RAYMOND MCINERNEY, in his individual capacity, for damages in excess of the jurisdictional amount of $75,000, including but not limited to actual and compensatory damages; punitive damages

against both Defendants in their individual capacities; attorney's fees and costs; trial counsel's fees and costs, pre- and post-judgment interest, and any and all other relief to which he may be entitled, in an amount deemed at the time of trial to be just, fair, and appropriate.

## Count II – Conspiracy to Violate § 1983

77. Mr. Murphy incorporates by reference paragraphs 1-71.

78. While acting under color of state law, Defendants reached an agreement to violate Mr. Murphy's constitutional rights, protected under the Fourth, Fifth, and Fourteenth Amendments.

79. While acting under color of state law, Defendants committed acts in furtherance of the conspiracy, including but not limited to falsely arresting Plaintiff, falsely charging or causing Plaintiff to be charged with the offenses in Case No. 10 CR 11890; fabricating evidence against Plaintiff; testifying falsely in support of the criminal proceedings; and withholding material exculpatory evidence from prosecutors and the trial court.

80. Defendants' conspiracy directly and proximately caused the deprivation of Mr. Murphy's constitutional rights under the Fourth, Fifth, and Fourteenth Amendments, resulting in Mr. Murphy's wrongful incarceration for more than three and one-half years, costs incurred in trial defense, as well as attendant injuries including but not limited to loss of wages, emotional damage and trauma, humiliation, damage to personal and professional reputation, loss of liberty, and mental distress and anguish.

WHEREFORE, Plaintiff HALDERON MURPHY demands judgment jointly and severally against TIMOTHY HAYES, in his individual capacity, and RAYMOND MCINERNEY, in his individual capacity, for damages in excess of the jurisdictional amount of

$75,000, including but not limited to actual and compensatory damages; punitive damages against both Defendants in their individual capacities; attorney's fees and costs; trial counsel's fees and costs, pre- and post-judgment interest, and any and all other relief to which he may be entitled, in an amount deemed at the time of trial to be just, fair, and appropriate.

## **Count III – Indemnification**

81. Mr. Murphy incorporates by reference paragraphs 1-71 and Counts I-II.

82. Mr. Murphy alleges Count III against Defendant CITY OF CHICAGO only.

83. In committing the acts alleged in this Complaint, Defendants were at all times employed by and/or an officer/sergeant of the CITY OF CHICAGO, and were acting as agents of the CITY OF CHICAGO, and within the scope of their employment.

84. In committing the actions alleged in this Complaint, the Defendants acted in violation of statutory or constitutional law.

85. Under 745 ILCS 10/9-102, public entities are directed to indemnify their employees for any and all tort judgments for damages for which their employees are liable.

86. As a direct and proximate cause of Defendants' willful and wanton actions, Mr. Murphy suffered injuries including but not limited to loss of wages, trial defense costs and fees, emotional damage and trauma, humiliation, damage to personal and professional reputation, loss of liberty, and mental distress and anguish.

WHEREFORE, Plaintiff HALDERON MURPHY demands judgment against the CITY OF CHICAGO for damages adjudged against the other Defendants in excess of the jurisdictional amount of $75,000, including but not limited to actual and compensatory damages; attorney's fees and costs; trial counsel's fees and costs; pre- and post-judgment interest; and any and all

other relief to which he may be entitled, in an amount deemed at the time of trial to be just, fair, and appropriate.

## Jury Demand

87. Mr. Murphy demands trial by jury on all claims for which he is entitled to trial by jury.

WHEREFORE, Plaintiff HALDERON MURPHY demands judgment jointly and severally against TIMOTHY HAYES, in his individual capacity, RAYMOND MCINERNEY, in his individual capacity, and the CITY OF CHICAGO for damages in excess of the jurisdictional amount of $75,000, including but not limited to actual and compensatory damages; punitive damages against both Defendants in their individual capacities; attorney's fees and costs; trial counsel's fees and costs, pre- and post-judgment interest, and any and all other relief to which he may be entitled, in an amount deemed at the time of trial to be just, fair, and appropriate.

Respectfully submitted,

s/ Steven W. Becker

Steven W. Becker
Law Office of Steven W. Becker LLC
500 N. Michigan Avenue, Suite 600
Chicago, Illinois 60611
(312) 396-4116
swbeckerlaw@gmail.com
Attorney for Plaintiff